350 A.2d 812

Joseph J. PETERS and Marie H. Peters
et al., Appellants,

v.

COMMONWEALTH of Pennsylvania, DEPARTMENT OF
FORESTS AND WATERS, Appellees.

Supreme Court of Pennsylvania.

Argued Nov. 27, 1974.

Decided Jan. 29, 1976.

Thomas M. Garrity, Wisler, Pearlstine, Talone, Craig & Garrity, Norristown, Burton Spear, Renninger, Spear & Kupits, Doylestown, for appellants.

Francis J. Tarquini, Mabel Ditter Sellers, Ambler, for appellees.

Before JONES, C. J., and O'BRIEN, POMEROY and MANDERINO, JJ.

## OPINION

POMEROY, Justice.

We here consider a challenge to the legality of condemnation by the Commonwealth of Pennsylvania for state park purposes of farm property owned by the appellants.

On December 30, 1970, as part of the land acquisition plan for the Evansburg State Park Project in Montgomery County, the Department of Forests and Waters [1] (Department), on behalf of the Commonwealth, filed a Declaration of Taking condemning 49.4 acres owned by Doctor and Mrs. Joseph Peters and their children. Except for the Peters' tract, which is known as "Skippack

---

1. Now the Department of Environmental Resources. See Section 1901–A of the Administrative Code of 1929, Act of April 9, 1929, P.L. 177, art. XIX–A, added by Act of December 3, 1970, P.L. 834, No. 275, § 20, 71 P.S. § 510–1(1) (Supp.1975–1976), and Section 202 of the Administrative Code of 1929, Act of April 9, 1929, P.L. 177, art. II, *as amended,* 71 P.S. § 62 (Supp.1975–1976).

Creek Farms", all the land for the Evansburg Project was acquired by the Commonwealth under the Project 70 Land Acquisition and Borrowing Act, Act of June 22, 1964, Special Sess., P.L. 131, No. 8, 72 P.S. § 3946.1 *et seq.*[2] "Skippack Creek Farms" was also to have been a Project 70 acquisition according to preliminary notices received by the Peters from the Department. Ultimately, however, it was condemned pursuant to the then effective Section 1806(b) of the Administrative Code of 1929, Act of April 9, 1929, P.L. 177, *as amended,* 71 P.S. § 466(b).[3] That section empowered the Department of Forests and Waters,

> "[f]or the purpose of promoting healthful outdoor recreation and education, and making available for such use natural areas of unusual scenic beauty, especially such as provide impressive views, water falls, gorges, creeks, caves, or other unique and interesting features, to acquire, in the name of the Commonwealth, by purchase, gift, lease, or condemnation, any lands which, in the judgment of the department, should be held, controlled, protected, maintained and utilized as State park lands . . ."

To the Declaration of Taking the Peters filed preliminary objections alleging procedural irregularities and challenging the power of the Department to take their land under Section 1806(b). After a hearing, the court of common pleas of Montgomery County dismissed the preliminary objections, and this action was affirmed on

---

**2.** The Project 70 legislation authorizes the creation of debt and the issuance of bonds in the amount of seventy million dollars in order to acquire land for state parks, reservoirs and other conservation, recreation and historical purposes. Section 4 of the Project 70 Land Acquisition and Borrowing Act, *supra,* 72 P.S. § 3946.4. Section 17(a) of the Act, 72 P.S. § 3946.17(a) empowers the Commonwealth to acquire land for the above purposes by means of condemnation. See *Avery v. Commonwealth,* 2 Pa. Cmwlth. 105, 276 A.2d 843 (1971); *Commonwealth v. Kahn,* 46 D. & C.2d 529 (Pa.C.P.1969).

**3.** It is now Section 1906–A of the Administrative Code of 1929, *supra,* 71 P.S. § 510–6(2) (Supp.1975–1976).

appeal by the Commonwealth Court. We granted allocatur limited to consideration of the extent of the Department's authority to condemn under § 1806(b). We now affirm.

■ The Commonwealth Court interpreted § 1806(b) as empowering the Department to condemn land for park use either for the purpose of promoting healthful outdoor recreation and education or in order to make available for such use areas of unusual scenic beauty. Appellants' main contention is that such an interpretation does violence to the plain meaning of the words of the statute. Claiming that the purpose clause of the statute is clearly cast in the singular, they argue that a plurality of purposes may not be created by the courts under the guise of statutory construction. They insist that the Department's authority to condemn is limited strictly to lands of unusual scenic beauty which would serve to promote outdoor recreation and education. As further support for their interpretation, they point to the strict construction which is due statutes conferring the power of eminent domain. See Statutory Construction Act of 1972, 1 Pa.C.S. § 1928(b)(4) (Pamphlet 1973). Because the evidence established that their farm property is not of "unusual scenic beauty", appellants conclude that the Department is powerless to condemn it under § 1806(b), notwithstanding that the property, according to uncontradicted testimony, has a number of "interesting features that would lend themselves to the Department's program for state park development" (N.T.150a).

In resolving this conflict as to the proper interpretation of § 1806(b), our task is, first, to ascertain the intention of the legislature in enacting the provision, and then to construe it in such a way as to effectuate the legislative intent. Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(a) (Pamphlet 1973); *Commonwealth v. Rieck Investment Corp.*, 419 Pa. 52, 213 A.2d 277 (1965); *Davis v. Sulcowe,* 416 Pa. 138, 205 A.2d 89

(1964). When statutory language is unambiguous and conveys a clear and definite meaning, resort to the rules of statutory construction is unnecessary. When, however, the statutory language is unclear or susceptible of more than one reasonable construction (which we think is the case here), our attention must turn to other considerations. Primary among such considerations in this case are the object of the legislation, and the consequences of the two possible interpretations.[4]

We find appellants' reading of the statute unduly restrictive and inconsonant with what we discern as the legislative intent underlying § 1806(b). By the terms of § 1806,[5] the Department, since its inception, has been charged with responsibility for the creation, maintenance and operation of our state park system. As an indispensable aid to the creation of a park system, the Department was authorized by § 1806(b) to acquire land suitable for park use. Without doubt, lands of unusual scenic beauty containing unique and interesting natural features of the sort mentioned in the section are conducive to activities long associated with park use. But not all, or even most, of the activities customarily conducted on park lands are dependent upon the presence of "water falls, gorges, creeks, [or] caves." Open fields, sloping valleys, tree covered hillsides and streams possessed of no singularly distinguishing characteristics are nonetheless particular-

4. The Statutory Construction Act, 1 Pa.C.S. § 1921(c) (Pamphlet 1973) provides a non-exclusive list of these considerations:
    (1) The occasion and necessity for the statute.
    (2) The circumstances under which it was enacted.
    (3) The mischief to be remedied.
    (4) The object to be attained.
    (5) The former law, if any, including other statutes upon the same or similar subjects.
    (6) The consequences of a particular interpretation.
    (7) The contemporaneous legislative history.
    (8) Legislative and administrative interpretations of such statute.

5. Section 1806(a)–(j) of the Administrative Code of 1929, *supra,* 71 P.S. § 466(a)–(j).

ly well-suited to common healthful outdoor recreational and educational pursuits such as outdoor games and sports, hiking, camping and picnicking. While these activities may, on occasion, be enhanced by the unusual scenic beauty of the place where they are conducted, restriction of them to such sites would undoubtedly curtail the frequency, and often the possibility, of their enjoyment. "Strict construction does not require . . . that a statute be construed as narrowly as possible, or that it be construed so literally and without common sense that its obvious intent is frustrated." *Pittsburgh School District Condemnation Case*, 430 Pa. 566, 570, 244 A.2d 42, 44 (1968). It seems obvious that the restrictive reading of the statute for which appellants contend would retard rather than promote the development and use of state parks, and we cannot attribute to the legislature an intention to limit the types of sites that may be acquired to those possessing "unusual scenic beauty". We agree with the Commonwealth Court that a condemnation pursuant to § 1806(b) may be undertaken for either of the two purposes which we find in that provision, viz., to promote healthful outdoor recreation and education and to make available for such use land of unusual scenic beauty.

■ Appellants also contend that the Department is precluded from relying on § 1806(b) as authority for the taking when it had originally informed them that the land was to be a Project 70 acquisition.[6] To allow condemnation of their property under any authority other than the Project 70 Act, they say, would undermine the purposes of that legislation which contains guidelines for the protection of property with historically significant characteristics [7] allegedly like those of the Peters' tract.

6. See note 2, *supra*.

7. See Section 17(e) of the Project 70 Land Acquisition and Borrowing Act, *supra*, 72 P.S. § 3946.17(e). The Peters claim their property is of special historical significance and deserving of the

We find this contention to be without merit. The substance of appellants' position is only that the Department eventually elected to proceed under one available statutory authorization to condemn rather than another, which appellants believe would have been more advantageous to them as condemnees. In our judgment, this course of action neither demonstrates arbitrariness [8] nor in any way derogates from the power and authority of the Department to proceed as it did.

Order affirmed.

EAGEN, ROBERTS and NIX, JJ., took no part in the consideration or decision of this case.

protection afforded such property by Section 17(e). However, the record testimony indicates that the Department, at the time when it intended the Peters' tract to be taken under Project 70, had consulted with the Pennsylvania Historical and Museum Commission in the manner required by the above statute section.

8. The testimony reveals that the reason for the choice was the probable unavailability of sufficient Project 70 funds for acquisition of the Peters' property. Moreover, there is no incompatability between the Project 70 legislation and the Administrative Code as far as the nature of lands permitted to be acquired by the Department of Forests and Waters is concerned. Under § 18(a) of the Project 70 Land Acquisition and Borrowing Act, *supra*, 72 P. S. § 3946.18(a), lands to be acquired by the Department "shall be such that they may be utilized for recreation, conservation and historical purposes and shall contribute to the sound development of the State's recreational resources."