# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

A. Gadley Enterprises, Inc. d/b/a   :
Young Environment Learning Center,  :
                       Petitioner   :
                                 :
            v.                 :  No. 196 C.D. 2015
                                 :  Submitted: November 17, 2015
Department of Labor and Industry,   :
Office of Unemployment Compensation :
Tax Services,                   :
                Respondent   :

BEFORE:   HONORABLE BONNIE BRIGANCE LEADBETTER, Judge
              HONORABLE ROBERT SIMPSON, Judge
              HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**            **FILED: January 5, 2016**

      A. Gadley Enterprises, Inc., d/b/a Young Environment Learning Center (Purchaser) petitions for review from an order of the Department of Labor and Industry (Department) that denied its petition for reassessment of unemployment compensation (UC) taxes, interest and penalties. The Department found Purchaser liable under Section 308.3(a) of the UC Law (Law),[1] commonly known as the bulk sales provision, for UC contributions owed by Julianne Gresh (Predecessor), sole proprietor of Romper Room Day Care (Romper Room), from whom Purchaser acquired business assets.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, as amended, 43 P.S. §788.3(a).

Purchaser contends the bulk sales provision does not apply because it did not purchase more than 51% of Predecessor's assets. It asserts the Department erred in construing "assets" to mean only business assets. Id. Rather, because Predecessor operated as a sole proprietor, all her assets should be considered in considering whether the transaction reached the 51% threshold for UC tax liability. Discerning no error below, we affirm.

## I. Background

Predecessor operated Romper Room, a child care center, as a sole proprietorship for 12 years. Predecessor owed the Department substantial unpaid UC contributions, interest and penalties. She admitted liability and entered payment plans with the Department in 2008, and again in 2012. Pursuant to these payment plans, she made monthly payments in the minimal amount of $50. Predecessor was on the verge of losing her license to operate, and sought another entity to operate the location as a child care facility.

Incorporated in 2001, Purchaser operated a child care center, Young Environment Learning Center, in Erie, Pennsylvania. Purchaser decided to purchase assets from Predecessor in order to open a satellite location of Young Environmental Learning Center at the prior location of Romper Room. Purchaser and Predecessor executed an asset purchase agreement (Agreement). Reproduced Record (R.R.) at 132a-68a.

Through the Agreement, Purchaser paid a total of $37,000 for Predecessor's tangible and intangible assets. This total was comprised of $10,000

2

for the use of the name "Romper Room," $10,790 for a covenant not to compete, and $17,210 for tangible assets listed on Exhibit A to the Agreement (Inventory List). See R.R. at 148a-50a. The original total asset price was $39,000. However, the parties executed an addendum to the Agreement reflecting a $2,000 reduction in consideration for the value of tangible assets removed from the Inventory List, from $19,210 to $17,210.

Importantly, Section 2.10(c) of the Agreement provides: "The Assets, including without limitation, those items listed on attached Exhibit A, constitute all of the property presently owned by [Predecessor] which is used in the Business." R.R. at 139a (emphasis added). The final bill of sale stated: "all and singular the personal property set forth in [Inventory List], including but not limited to the Equipment, Furniture, Inventory, Fixtures, Customer Records, and intangible Assets of the business operated as [Romper Room] are sold to [Purchaser]." R.R. at 151a. The Inventory List did not include any of Predecessor's personal assets other than those used in the operation of Romper Room. At the time of the transaction, Predecessor did not possess any accounts receivable or own any real estate used in the business.

Predecessor did not notify the Department of the sale of Romper Room prior to executing the Agreement. Four days *after* executing the Agreement, at a hearing before a magisterial district judge (MDJ) for the collection of past due UC contributions, Predecessor notified the Department of the sale. Tax Agent Kathy Boozel, (Tax Agent), then investigated the circumstances of the sale.

3

Based on Tax Agent's investigation, the Department issued Purchaser a Notice of Assessment (Notice) in the amount of $43,370.49 for UC contributions, interest and penalties owed by Predecessor. R.R. at 1a. The Notice stated Purchaser was liable because it purchased 51% or more of Predecessor's assets.

In response, Purchaser filed a petition for reassessment. Purchaser asserted Predecessor was not an "employer" under the Law because she had no employees at the time of the sale. Purchaser also contended the total value of the assets purchased amounted to less than 51% of Predecessor's total assets.

A hearing examiner held a hearing on the petition. The Department presented the testimony of Tax Agent and Julianne Gresh (Gresh),[2] the former sole proprietor of Romper Room. Purchaser presented the testimony of Anne Marie Gadley (Gadley), its president and owner, and the testimony of Laura Hellman (Hellman), an employee of Small Business Alternatives (SBA), Purchaser's accountant.

Tax Agent testified as to her communications with Gresh at the hearing post-sale, and as to her investigation. She confirmed the Department did not receive notice of the sale of Romper Room until the date of the hearing before the MDJ regarding Predecessor's UC tax liability. Tax Agent requested a copy of the Agreement from Gresh, which Gresh supplied.

---

[2] We use "Gresh" to refer to Julianne Gresh, the former sole proprietor of Romper Room, as to events that transpired post-Agreement. We use "Predecessor" to refer to the former business.

Based on the values reflected in the Agreement, Tax Agent concluded Purchaser purchased over 51% of Gresh's assets. She noted the value of the Inventory List equaled $19,210. Because Purchaser purchased $17,210 of the listed assets, Tax Agent concluded Purchaser purchased 90% of the total assets. She acknowledged her sole basis for determining the bulk sales provision applied was the Agreement. She did not attempt to determine the value of any personal assets not listed, nor did she attempt to obtain an independent appraisal of the value of the listed assets.

Subsequently, Tax Agent contacted SBA, which processes Purchaser's payroll. She instructed Hellman of SBA to file a PA-100 Enterprise Registration for Purchaser (PA-100 form).[3] Tax Agent directed Hellman to reflect that Purchaser purchased more than 51% of the assets of Romper Room.

Hellman testified she completed the PA-100 form at Tax Agent's direction believing it would resolve UC claims of former Romper Room employees against Purchaser. She did not review the PA-100 form with Gadley or any other representative of Purchaser prior to submitting it. She also did not research the percentage of assets Purchaser acquired or review the Agreement.

Gadley testified she was not involved in preparing the PA-100 form, which is inaccurate. Gadley did not become aware that SBA filed the PA-100 form

---

[3] All employers operating within Pennsylvania must register with the Commonwealth for tax purposes by submitting a PA-100 within 10 days of paying an employee for the first time. 61 Pa. Code §113.3b. Purchaser was already registered as an employer with the Department.

until after she received the Notice. Gadley confirmed Purchaser did not obtain a clearance certificate from Predecessor showing the payment of all UC liability.

When Gadley learned SBA submitted the PA-100 form without her authorization, Purchaser submitted a letter to the Department that revoked, rescinded and withdrew the PA-100 form. R.R. at 131a. Therein, Purchaser advised the Department the PA-100 form contained substantial errors, and SBA prepared and submitted the form without Gadley's knowledge or authorization.

Relevant here, Purchaser did not present any evidence to support its assertion that Predecessor owned personal assets not set forth in the Agreement to refute the percentage of purchased assets. Gresh did not testify as to the value of any personal assets beyond those included in the Inventory List. She testified: "No. I have no personal property." Dep't Hr'g, 8/22/14, Notes of Testimony (N.T.), at 58; R.R. at 62a. Gresh confirmed the Inventory List represented a complete list of Predecessor's business assets. Gresh also confirmed she terminated seven Romper Room employees prior to its last day of operations.

Based on the evidence presented at the hearing, the Department issued its decision and order denying the petition for reassessment. Significantly, the Department found Purchaser met and exceeded the threshold for bulk sales so as to shoulder UC tax liability. The Department found the Inventory List set forth all the assets Predecessor used in the business. Dep't Op., 1/21/15, Finding of Fact (F.F.) No. 8. The Department emphasized Gadley did not know whether Purchaser

6

purchased 51% or more of Predecessor's assets. Gadley testified she "hoped" she had not purchased more than 51%. Dep't Op. at 8; N.T. at 88.

The Department did not credit Gadley's testimony that Purchaser did not purchase 51% or more of Predecessor's assets. Also, the Department gave greater weight to the testimony of Tax Agent than to the testimony of Gresh. It characterized Gresh's testimony as "vague." Dep't Op. at 7.

The Department construed Section 308.3(a) of the Law as limited to the sale of an employer's business assets, regardless of employer's status as a sole proprietor. It reasoned that personal assets of a sole proprietor are not included when calculating whether a sale transferred 51% or more of an employer's assets.

Purchaser then filed a petition to review to this Court.

## II. Discussion

On appeal,[4] Purchaser asserts the bulk sales provision in Section 308.3 of the Law is not triggered for two reasons: (1) substantial evidence does not establish Purchaser acquired more than 51% of Predecessor's assets; and, (2) when the sale involves a sole proprietorship, the term "assets" includes personal assets.

---

[4] Our review is limited to determining whether necessary findings were supported by substantial evidence, whether the Department committed an error of law, or whether the petitioner's constitutional rights were violated. Victor v. Dep't of Labor & Indus., 647 A.2d 289 (Pa. Cmwlth. 1994).

Section 308.3(a) of the Law (relating to transfer of assets; liability of purchaser) provides (with emphasis added):

> (a) Every employer subject to the provisions of this act, who shall sell in bulk fifty-one percentum or more of his assets, including but not limited to, any stock of goods, wares or merchandise of any kind, fixtures, machinery, equipment, building or real estate, shall give the department ten (10) days' notice of the sale prior to completion of the transfer of the property. It shall be the duty of such employer to file all contribution reports with the department to the date of such proposed transfer of property and pay all contributions, interest, penalties due and payable thereon. The employer shall present to the purchaser of such property, a certificate which shall be furnished forthwith by the department showing that all reports have been filed and contributions, interest and penalties paid to the date of the proposed transfer. The failure of the purchaser to require such certificate shall render such purchaser liable to the department for the unpaid contributions, interest and penalties owing by the employer.

43 P.S. §788.3(a). The purpose of the bulk sale provision is to prevent an employer owing taxes "from denuding itself of its assets without first making payment of such taxes or without such taxes being made by the purchaser of its assets." Reese's Pizzas & More v. Dep't of Labor & Indus., Office of Unemployment Comp. Tax Servs., 93 A.3d 914, 917 (Pa. Cmwlth. 2014) (emphasis in original) (quoting Com., Dep't of Justice v. Socony-Vacuum Oil Co., 32 A.2d 631, 633 (Pa. 1943)).

Pursuant to Section 308.3(a), a purchaser of 51% or more of any employer's bulk assets must obtain a clearance certificate from the seller indicating

all UC contributions, interest and penalties were paid. Id. Where the purchaser fails to obtain a certificate, the purchaser is liable to the Department for the seller's unpaid contributions, interest and penalties. 43 P.S. §788.3(a).

There is no dispute that Purchaser did not obtain a clearance certificate reflecting Predecessor's payment of UC liability. There is also no dispute that Predecessor owed the Department for outstanding UC contributions, interest and penalties in the amount of $43,370.49 at the time of the sale.

**A. Substantial Evidence**

Purchaser argues substantial evidence does not support the Department's finding that it purchased more than 51% of the assets as is required to trigger the bulk sales provision. It asserts the only evidence establishing the 51% threshold is the PA-100 form. Purchaser claims the PA-100 form does not constitute substantial evidence because it is inaccurate, and SBA filed it without Purchaser's authorization.

The Department counters that the finding regarding the apportionment of assets is based on the Agreement and the Inventory List. Additionally, the Department emphasizes Purchaser did not submit any evidence to rebut the Department's conclusion or calculation as to the 51% threshold.

Importantly, the Department found, "[t]he [Agreement] … resulted in the sale and transfer of approximately 90% of [Gresh's] physical business assets." F.F. No. 16. From our review of the record, we acknowledge that the PA-100 form

9

contains inaccuracies. Regardless, the Department's finding is supported by the Agreement.

The Agreement establishes that the Inventory List sets forth all business assets of Predecessor. See Section 2.10(c) of Agreement; R.R. at 139a; see also Bill of Sale, R.R. at 151a. Gresh confirmed the Inventory List was a complete list of assets used in the operation of her business. R.R. at 58a. Also, Predecessor had no accounts receivable at the time of the transaction, and it owned no real estate. Id.

The Inventory List reflects a total value of assets equaling $19,210. Id. at 148a-50a. Purchaser did not dispute the accuracy of that valuation during the hearing.[5] The parties reduced the purchase price by $2,000 to account for the reduced value of the assets when Purchaser removed certain assets from the complete Inventory List. Id. at 97a. Purchaser acquired all the assets included in the Inventory List, other than those removed, for $17,210. Id. at 58a; 92a. The amount constitutes approximately 90% of the value of the complete list of assets ($19,210 x .9 = $17,289).

The Agreement, supplemented by corroborating testimony, constitutes substantial evidence to support the Department's finding that the sale qualified as a bulk sale of more than 51% of Predecessor's assets.

---

[5] Gadley testified that in addition to the items on the Inventory List, Predecessor owned a shed related to the business. R.R. at 92a-93a. However, Purchaser offered no evidence regarding the value of the shed or its contents.

To the extent Purchaser asserts the calculation is flawed because it does not account for Gresh's personal assets, this Court remains unpersuaded.

To that end, Purchaser bore the burden of refuting the Department's calculation. COAX, LLC v. Dep't of Labor & Indus. (Pa. Cmwlth., No. 1600 C.D. 2010, filed January 7, 2011) (unreported). To alter the Department's conclusion that Purchaser acquired 51% or more of Predecessor's assets, Purchaser had to prove Gresh owned personal assets valued at approximately $35,125 ($35,125 x .49 = $17,211.250). However, Purchaser presented no evidence as to the value of Gresh's personal assets. In addition, Gresh testified she had no other personal assets. R.R. at 62a. Consequently, the record lacks any evidence that Gresh owned sufficient personal assets to alter the percentage calculation.

Notably, Gresh was available at the hearing to offer testimony. Nevertheless, Purchaser did not pursue the asset line of questioning. Therefore, to the extent the record does not contain sufficient evidence as to the value of all of Predecessor's assets at the time of the transaction, the fault lies with Purchaser.

Based on the foregoing, the record contains substantial evidence to support the Department's finding that Purchaser purchased 51% or more of Predecessor's assets.

### B. Meaning of "Assets"

Purchaser also argues the Department erred in construing the term "assets" in the bulk sales provision to include only business assets when

11

determining whether a sale met the 51% threshold. Purchaser asserts the provision does not differentiate between business and personal assets of an employer and there is no legal distinction when the employer is a sole proprietor.

The Department responds that its interpretation of the bulk sales provision as limited to business assets is consistent with statutory construction principles. It argues the type of assets listed in the provision as examples indicates a legislative intent to include only business assets. The Department also contends Purchaser's proffered interpretation leads to an absurd result, placing additional burdens on purchasers and the Department.

At the outset, we emphasize "the interpretation given to a statute by the agency charged with its application is entitled to great weight and should be disregarded or overturned only if such construction is clearly erroneous." The Glidden Co., Inc. v. Dep't of Labor & Indus., 700 A.2d 555, 556-57 (Pa. Cmwlth. 1997). Accordingly, the Department's construction of the bulk sales provision is entitled to deference. Id.

In construing a statute, we consider the provision as a whole and in context. 1 Pa. C.S. §1903. Moreover, statutes imposing tax liability are to be strictly construed. 1 Pa. C.S. §1928(b)(3). Also, "any doubt or uncertainty as to the imposition of the tax must be resolved in favor of the taxpayer." Pa. Power & Light Co. v. Bd. of Fin. & Revenue, 717 A.2d 504, 507 (Pa. 1998). However, "[s]trict construction does not require ... that a statute be construed as narrowly as possible, or that it be construed so literally and without common sense that its

12

obvious intent is frustrated." Reaman v. Allentown Power Ctr., L.P., 74 A.3d 371, 374 (Pa. Cmwlth. 2013), app. denied sub nom., Whitehall Twp. Treasurer v. Allentown Power Ctr., L.P., 85 A.3d 485 (Pa. 2014) (quoting Peters v. Dep't of Forests & Waters, 350 A.2d 812, 814-15 (Pa. 1976)).

With these principles in mind, we analyze the bulk sales provision. Fundamentally, Section 308.3 applies to an employer's sale of 51% or more of its assets.

In pertinent part, the Law defines "employer" as: "the Commonwealth of Pennsylvania, its political subdivisions, and their instrumentalities and every individual, copartnership, association, corporation (domestic or foreign) ... who or which employed or employs any employe in employment subject to this act for some portion of a day during the calendar year ...." Section 4(j)(l) of the Law, 43 P.S. §753(j)(1). Thus, the definition of "employer" includes a sole proprietor like Predecessor.

The word "assets" is not defined in the Law or in the Statutory Construction Act, 1 Pa. C.S. §1991. Thus, we consider the term in context to discern its meaning.

The term "assets" precedes a list of examples, followed by the phrase "including but not limited to." 43 P.S. §788.3(a). The provision then lists "any stock of goods, wares or merchandise of any kind, fixtures, machinery, equipment, building or real estate" as examples. Id.

13

In construing such a list narrowly, this Court holds that "under the principle of *ejusdem generis*[6] 'it is widely accepted that general expressions such as 'including, but not limited to' that precede a specific list of included items … apply only to persons or things of the same general kind or class as those specifically mentioned in the list of examples.'" Commonwealth v. Philip Morris, Inc., 4 A.3d 749, 756 (Pa. Cmwlth. 2010) (quoting McClellan v. Health Maint. Org. of Pa., 686 A.2d 801, 805 (Pa. 1996) (op. in support of affirmance)). Generally, courts interpret an undefined term as similar to the types of examples listed in the same provision. See Tech One Assocs. v. Bd. of Property Assessment, Appeals & Review of Allegheny Cnty., 53 A.3d 685, 697 (Pa. 2012) (when a general word follows a list of specific items, the general word must be construed as similar to the specific examples).

Following these principles of construction, the examples in Section 308.3(a) (such as stock and equipment), indicate that the term "assets" refers to business assets. This conclusion is buttressed by the context of the statute as a whole, which pertains to employers operating businesses and paying employees as part of their business operations.

The factual circumstances surrounding the sale also indicate the term "assets" means "business assets." Here, the context is the sale of a business,[7] in the

---

[6] The statutory construction principle of *ejusdem generis* is codified by Section 1903(b) of the Statutory Construction Act, 1 Pa. C.S. §1903(b).

[7] In the context of an equitable distribution of marital assets, when valuing assets of sole proprietorship, courts considered only the business assets. See, e.g., Fexa v. Fexa, 578 A.2d **(Footnote continued on next page…)**

14

child care industry, to another business engaged in the same industry that intends to operate a child care facility at the location of the former business. The Agreement reflects the intention of the parties that Purchaser would operate the child care facility as a satellite location.

Interpreting "assets" as limited to business assets is also consistent with the interpretation of identical terms used in Section 1403 of the Fiscal Code,[8] regarding liability for bulk sales or transfers of 51% or more. Pizzutti, Inc. v. Com., 976 A.2d 641 (Pa. Cmwlth. 2009), aff'd, 6 A.3d 1289 (Pa. 2010) (construing purchaser of bulk assets); see also Section 240 of the Tax Reform Code of 1971[9] (relating to bulk and auction sales). This Court previously relied on the interpretation of bulk sales provisions in the Fiscal Code when applying the bulk sales provision in the Law. See, e.g., Reese's Pizzas (relying on Dep't of Revenue v. Qwest Transmission, Inc., 765 A.2d 818 (Pa. Cmwlth. 2000); Dep't of Revenue, Bureau of Corp. Taxes v. Marros, 431 A.2d 392 (Pa. Cmwlth. 1981)).

Purchaser maintains that the absence of any distinction between business and personal assets in the statute itself evinces an intent to apply to *all* of an employer's assets, regardless of the source. We disagree.

---

**(continued…)**

1314 (Pa. Super. 1990) (in determining value of business for distribution, court considered only the value of the business assets).

[8] Act of April 9, 1929, P.L. 343, as amended, 72 P.S. §1403.

[9] Act of March 4, 1971, P.L. 6, as amended, 72 P.S. §7240.

Significantly, Purchaser does not cite any legal support for its construction of assets to include personal assets of sole proprietors. Instead, it argues its interpretation is based on the plain meaning of the provision.

To the contrary, the provision does not treat sole proprietors differently than other employers. The provision contains no exemption of liability for a purchaser when an employer operates as a sole proprietorship. Nor does it contain an exemption from liability when the former employer entered a repayment plan with the Department.

Moreover, Purchaser's interpretation does not consider the purpose of the bulk sales provision. That purpose is to ensure an employer does not divest itself of assets without satisfying outstanding liabilities, either itself or by the purchaser. Reese's Pizzas. This Court agrees with the Department that Gresh's repayment agreement in the minimal amount of $50 per month does not satisfy the UC liability.

To the extent Purchaser raises the repayment plan as grounds for holding Predecessor solely liable for the assessment, we reject this argument. Although Gresh makes monthly payments to the Department, this Court recently held that an agreement as to liability will not absolve a purchaser of UC liability under the bulk sales provision. Reese's Pizzas.

In Reese's Pizzas, the purchaser asserted the bulk sales provision did not apply based on the circumstances of the transaction. There, the purchaser

bought the predecessor's assets at a "fire sale" under a tight timeframe. Id. at 917. It argued the sale occurred quickly so predecessor had sufficient funds to pay off its UC liability. Applying the bulk sale provision, this Court reasoned the terms imposing liability were clear. Id. We held statutory liability could not be modified by the terms of an agreement between the parties. Id.

Here, as in Reese's Pizzas, Purchaser is not challenging the *amount* of tax liability. Rather, Purchaser asserts it is not liable for any unpaid taxes under these circumstances, involving a sale by a sole proprietor obligated by a repayment agreement. Purchaser thus disregards that circumstances of a transaction do not absolve a purchaser from compliance with the bulk sale provision. Id.

This Court repeatedly holds "a purchaser's failure to comply with the certificate requirement deprived [it] of an opportunity to later challenge" the assessment. Reese's Pizza, 93 A.3d at 918; accord Qwest Transmission; Marros. Purchasers, "like all other Pennsylvanians, are presumed to know the law." Marros, 431 A.2d at 394.

In sum, the Department's construction of assets as business assets is reasonable and consistent with the context and purpose of a bulk sales provision. Purchaser's failure to obtain a clearance certificate rendered it liable for Predecessor's unpaid UC contributions, interest and penalties, regardless of

Predecessor's repayment agreement.[10]   <u>Reese's Pizzas</u>.   Therefore, this Court upholds the Department's interpretation of the bulk sales provision.

### III. Conclusion

While the result here may seem unfair from Purchaser's point of view, the result is required by the Law, and the practical reasons for shifting the risk of collection to a bulk purchaser are illustrated by these facts.  Purchaser was in a superior position to protect itself.[11]   For the foregoing reasons, we affirm the Department.

<br>

ROBERT SIMPSON, Judge

---

[10]   An agreement may not alter existing statutes to which contracting parties remain bound.  <u>Generette v. Donegal Mut. Ins. Co.</u>, 957 A.2d 1180 (Pa. 2008).

[11] Because the Law is clear that UC liability follows an employer's assets, Purchaser's remedy is a breach of contract action against Predecessor for misrepresenting liabilities of the business.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

A. Gadley Enterprises, Inc. d/b/a : 
Young Environment Learning Center, : 
                      Petitioner : 
                                 : 
              v. :   No. 196 C.D. 2015
                                 : 
Department of Labor and Industry, : 
Office of Unemployment Compensation : 
Tax Services, : 
                      Respondent : 

## O R D E R

**AND NOW**, this 5th day of January, 2016, the order of the Department of Labor and Industry, Office of Unemployment Compensation Tax Services is **AFFIRMED**.

 

                                 _____

                                  ROBERT SIMPSON, Judge