**COMMONWEALTH of Pennsylvania, DEPARTMENT OF REVENUE**

**v.**

**QWEST TRANSMISSION, INC. (formerly Microwave Site Maintenance, Inc. and Qwest Communications, Inc.) as Bulk Transferee under 72 P.S. § 1403(a) from Qwest Microwave Corporation, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Sept. 11, 2000.

Decided Dec. 5, 2000.

Reargument Denied Feb. 15, 2001.

Jeffrey S. Blum, Pittsburgh, for appellant.

Christos A. Katsaounis, Harrisburg, for appellees.

Before COLINS, Judge, LEADBETTER, Judge, and LEDERER, Senior Judge.

LEDERER, Senior Judge.

The issue presented is whether the Court of Common Pleas of York County (trial court) erred by granting the Pennsylvania Department of Revenue's preliminary objections in the form of a demurrer, which dismissed the affidavit of defense filed by Qwest Transmission, Inc. We hold that the trial court properly denied Qwest Transmission, Inc. the right to contest the amount of the corporate tax settlement made by the Department of Revenue (Department) against Qwest Microwave VII, Inc. Thus, the order of the trial court is affirmed.

The facts of this case are as follows. On or about December 3, 1991, Qwest Microwave VII, Inc. merged with Qwest Acquisition Group who on that same day changed

its name to Qwest Microwave Corporation. On or about May 7, 1992, Qwest Microwave Corporation sold all of its assets to Microwave Site Maintenance, Inc., without having secured from Qwest Microwave Corporation a bulk sale clearance certificate as required by Section 1403 of The Fiscal Code (Code).[1] As a result of this failure, Microwave Site Maintenance, Inc. became liable for the unpaid taxes of Qwest Microwave Corporation.

On or about February 12, 1993, Qwest Microwave Corporation filed its corporate tax report for the tax year commencing October 1, 1991 and ending September 30, 1992. In the tax report, Qwest Microwave Corporation stated that it was the survivor in the merger with Qwest Microwave VII, Inc. and that this was its final tax report. Additionally, Qwest Microwave Corporation filed a withdrawal affidavit with an application for corporate clearance. The Department did not approve the withdrawal because the tax liability of Qwest Microwave VII, Inc. was not filed or paid.

On or about November 11, 1993, Qwest Microwave VII, Inc. filed its corporate tax report for the tax year ending December 3, 1991. The tax report was marked final and noted that Qwest Microwave VII, Inc. had merged into Qwest Microwave Corpo-

ration on December 3, 1991. On November 14, 1994, the Department issued a settlement agreement against Qwest Microwave VII, Inc. for a tax liability of $1,421,542 plus interest. This settlement was not appealed or challenged by Qwest Microwave VII, Inc., Qwest Microwave Corporation, or Microwave Site Maintenance, thus becoming final ninety (90) days thereafter pursuant to 72 P.S. §§ 1102, 1405 and 7407(c). *See, Commonwealth v. Lentz*, 353 Pa. 98, 44 A.2d 291 (1945).

After a series of merges and name changes, as of April 6, 1995, Microwave Site Maintenance became Qwest Transmission, Inc. The Department commenced this action in the trial court against Qwest Transmission, Inc. pursuant to Section 1404 of the Code,[2] to collect the tax settlement imposed against Qwest Microwave VII, Inc. A Writ of Scire Facias was issued May 19, 1999 against Qwest Transmission, Inc. to prosecute to judgment the tax lien in the amount of $2,535,173.50. On June 25, 1999, Qwest Transmission, Inc. filed an affidavit of defense in response to the Writ of Scire Facias. The Department filed preliminary objections in the nature of a demurrer to the affidavit of defense. On August 18, 1999, Qwest Transmission, Inc.

1. Act of April 9, 1929, P.L. 343, *as amended,* 72 P.S. § 1403. Section 1403 provides in part:

    (a) Every corporation, ... which shall sell or transfer in bulk fifty-one percent per centum or more of any stock of goods, wares, or merchandise of any kind, fixtures, machinery, equipment, buildings, or real estate, shall give the Department of Revenue ten days' notice of the sale or transfer prior to the completion of the transfer of such property. It shall also be the duty of every corporation, joint-stock association, limited partnership or company to file all State tax reports with the Department of Revenue, to and including the date of such proposed transfer of property and pay all taxes due the Commonwealth to and including said date. The seller or transferer shall present to the purchaser of such property a certificate from the Department of Revenue, showing that all State tax reports have been filed and all State taxes paid to and including the date of the proposed transfer. The

failure of the purchaser to require this certificate shall render such purchaser liable to the Commonwealth for the unpaid taxes owing by the seller or transferer to and including the date of such transfer, whether or not at that time such taxes have been settled, assessed, or determined....

2. Added by the Act of August 7, 1963, P.L. 559, § 1, 72 P.S. § 1404. Section 1404 provides in part:

    The Department of Revenue may, at any time, transmit to the prothonotaries of the respective counties of the Commonwealth, to be by them entered of record, certified copies of all liens for State taxes, unpaid bonus, interest, and penalties, which may now exist, or hereafter arise, by virtue of any law of this Commonwealth, upon which it shall be lawful for writs of scire facias to issue and be prosecuted to judgment and execution, in the same manner as such writs are ordinarily employed.

filed preliminary objections to the Department's preliminary objections.

By order and opinion dated November 30, 1999, the trial court granted the Department's preliminary objections, which dismissed the affidavit of defense. Qwest Transmission, Inc. appealed that decision to this Court.

■■■ On appeal,[3] Qwest Transmission, Inc. argues that it should be allowed to raise its defenses against the tax claim after the ninety (90) day period has run because the Department settled the tax claim against Qwest Microwave VII, Inc. instead of Qwest Transmission, Inc. in violation of 15 Pa.C.S. § 1929(c). We disagree.

The case at bar is indistinguishable from the controlling case of *Commonwealth v. Marros*, 60 Pa.Cmwlth. 263, 431 A.2d 392 (1981).[4] In *Marros*, Mr. and Mrs. Marros purchased the real estate of the West York Inn, Inc., which constituted more than 51% of the corporation's assets, on March 23, 1970. Mr. and Mrs. Marros failed to secure a bulk sale clearance certificate as provided for in Section 1403. At the time of the conveyance, corporate net taxes for the years 1969 and 1970 were owed but not settled until 1974. In 1979, the Department filed a complaint against Mr. and Mrs. Marros for the collection of the unpaid taxes. In holding that the Department had acted properly and Mr. and Mrs. Marros' rights were not violated, this Court stated the following:

> In the instant case, the Marroses do not deny liability, rather they seek to challenge the correctness of the assessment. The tax code sets forth procedures whereby taxpayers may appeal from assessments made by the Department. Marroses argue, however, that

they were not the taxpayer at the time the assessment was made and notice thereof was given. They insist that there is some duty upon the Department to search them out in order that they may take advantage of the rights afforded to taxpayers under the Code. Their complaint is that they did not know until 1979 about taxes due in 1970.

> Marroses, like all other Pennsylvania citizens, are presumed to know the law. 14 P.L.E. Evidence § 26 (1959). Had they followed the provisions of Section 1403 of the Code, they would have known about the taxes and they would have had the opportunity to contest the assessment thereof. As set forth in *Commonwealth v. Socony–Vacuum Oil Co., Inc.*, 347 Pa. 410, 416, 32 A.2d 631, 633 (1943), 'the object of [the statute] ... is obviously to prevent a corporation owing taxes to the Commonwealth from denuding itself of its assets without first making payment of such taxes or without such payment being made by the purchaser of its assets.'

> Being well satisfied that had Marroses acted in accord with the provisions of the law, they would have had an opportunity to have a judicial determination of the amount of taxes due, we must now address the question of whether their lack of diligence in that respect deprives them of the opportunity to raise that issue at this stage of the proceedings. We think that it does. A decision to hold otherwise would, for all practical purposes, render ineffective the collection procedures provided for in Section 1403. The duty imposed by Section 1403 upon the purchaser of corporate assets is not overly burdensome. The timely discharge of that duty would have assured the purchasers here that all tax-

---

3. Appellate review of an order granting preliminary objections in the nature of a demurrer is limited to determining whether the trial court abused its discretion of committed an error or law. *Chichester School District v. Chichester Education Association,* 750 A.2d 400 (Pa.Cmwlth.2000).

4. Qwest Transmission, Inc.'s brief to this Court neither cites nor attempts to distinguish this case which is cited and quoted by the trial court in its opinion and is directly on point.

es were paid or, if they were not paid, would have notified the purchasers of the amount thereof alleged to be due. As we have previously stated, that knowledge would then enable the purchaser to contest the amount of tax alleged to be due if it was felt that the assessment was erroneous. Having had that opportunity and having failed to exercise it, the Marroses cannot now complain that their constitutional rights have been infringed upon.

*Marros,* 431 A.2d at 394.

We have the same fact pattern in the case at bar as was presented in *Marros.* On May 7, 1992, Qwest Microwave Corporation sold its assets to a corporation eventually called Qwest Transmission, Inc. without having secured a bulk sale clearance certificate as required by Section 1403. As a result, Qwest Transmission, Inc. became liable for the unpaid corporate tax liability of Qwest Microwave VII, Inc. Had Qwest Transmission, Inc. acted in accord with the provisions of the law, it would have had an adequate opportunity to have a judicial determination of the amount of taxes due. Its lack of diligence in that respect deprives it the opportunity to raise that issue at this stage of the proceedings. *Marros.*

Qwest Transmission, Inc. bases their appeal on Section 1929(c) of the Associations Code.[5] Section 1929(c) provides the following:

> (c) Taxes.—Any taxes, penalties and public accounts of the Commonwealth, claimed against any of the merging or consolidating corporations but not settled, assessed or determined prior the merger or consolidation, shall be settled, assessed or determined against the surviving or new corporation and, together with interest thereon, shall be a lien against the franchises and property, both real and personal, of the surviving or new corporation.

15 Pa.C.S. § 1929(c).

We disagree with Qwest Transmission, Inc. that Section 1929(c) prevents the Department from settling the tax claim with Qwest Microwave VII, Inc. Qwest Transmission, Inc. argues that even though Qwest Microwave VII, Inc. filed the tax report solely under its own name for the tax year ending December 3, 1991 on November 11, 1993 that Section 1929(c) prevented the Department from settling the tax claim with Qwest Microwave VII, Inc. and sending notice of the tax settlement to the address set forth on the tax report.

The predecessor to Section 1929(c), which had identical language, was the law when this Court decided *Marros.* As stated in *Marros,* the Code does not impose a duty on the Department to search out the surviving entities when they merge with taxpayers. The Code, pursuant to Section 1403, requires the surviving corporation at the time of the merger to determine what taxes are owing, if any. Failure of a surviving corporation to follow the Code precludes it from later challenging the amount of taxes owed. *Marros.*

Accordingly, the order of the trial court is affirmed.

## *O R D E R*

AND NOW, this 5th day of December, 2000, the order of the Court of Common Pleas of York County in the above-captioned matter is hereby affirmed.

---

**5.** Act of December 21, 1988, P.L. 1444, No. 177, § 103, Effective October 1, 1989, 15 Pa. C.S. § 1929(c).