**REESE'S PIZZAS AND MORE, Petitioner**

v.

**DEPARTMENT OF LABOR AND IN-DUSTRY, OFFICE OF UNEMPLOY-MENT COMPENSATION TAX SER-VICES, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 14, 2014.

Decided April 11, 2014.

Publication Ordered June 19, 2014.

Gary T. Nietupski, Erie, for petitioner.

Jennifer M. Irvin, Assistant Counsel, Pittsburgh, for respondent.

BEFORE: McGINLEY, Judge, SIMPSON, Judge, COLINS, Senior Judge.

OPINION BY Judge SIMPSON.

Reese's Pizzas and More, Inc. (Purchaser) petitions for review from an order of the Department of Labor and Industry (Department) denying Purchaser's petition for reassessment of unpaid unemployment compensation (UC) taxes and penalties. The Department found Purchaser liable under Section 308.3(a) of the Unemployment Compensation Law (Law)[1] for unpaid UC contributions owed by Purchaser's predecessor, Joseph A. Monaco, trading and doing business as Two Friends Ristorante (Predecessor). Given the circumstances of the case, Purchaser contends the Department's ruling is contrary to law and public policy. For the reasons that follow, we affirm.

## I. Background

In its final decision and order, the Department found the following facts based on the parties' stipulations. In July 2010, Purchaser completed a form PA–100 (relating to enterprise registration) indicating it acquired 51% or more of Predecessor's assets. *See* Reproduced Record (R.R.) at 7a–12a. Shortly thereafter, Purchaser and Predecessor executed an asset purchase agreement (Sale Agreement). *Id.* at 13a–31a. The Sale Agreement contained language transferring all of Predecessor's assets free and clear of all claims, liabilities, taxes and liens.

At the time of the Sale Agreement, Purchaser knew that Predecessor faced incarceration for failure to properly pay Pennsylvania state sales and use tax for an extended period of time. However, the

parties closed very quickly in order for Predecessor to pay back taxes and stay out of prison. Consequently, Purchaser did not obtain a certificate pursuant to the bulk sales provisions in Section 308.(3)(a) of the Law.

In February 2011, the Department's Office of UC Tax Services, pursuant to Section 308.3 of the Law, issued Purchaser an assessment notice in the amount of $2,750.45 for UC contributions, interest and penalties owed by Predecessor up to the date of the Sale Agreement. *See* R.R. at 32a. In particular, the notice provided:

> Pursuant to Section 308.3 of the Law, 43 P.S. § 788.3, you are being assessed for unpaid contribution, interest and ... penalty owed by [Predecessor].
>
> You purchased 51% or more of the assets of the above employer, and did not require the employer to present a certificate issued by the Department showing that the employer had paid all contributions, interest and penalties it owed to the date of the transfer of the assets. Section 308.3 provides that a person who purchases 51% or more of the assets of an employer, and does not require a clearance certificate, is liable for any unpaid contributions, interest and penalties owed by the employer.

*Id.*

Purchaser filed a timely petition for reassessment asserting it should not be held liable for Predecessor's UC tax liability because it did not have time to obtain a bulk sales clearance certificate and because the Sale Agreement absolved Pur-

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended,* added by the Act of June 22, 1964, Special Sess., P.L. 112, 43 P.S. § 788.3(a). Section 308.3(a) states that any employer which sells in bulk 51% or more of its assets must provide the Department notice of the sale at least 10 days prior to the transfer. The seller must then provide the purchaser with a Department certificate showing all UC contributions were made. The failure of the purchaser to obtain this certificate shall render the purchaser liable to the Department for unpaid UC contributions, interest and penalties owed by the predecessor employer.

chaser from any of Predecessor's UC tax liability. *Id.* at 36a–38a.

In rejecting Purchaser's arguments, the Department's final decision observed that the clear language of Section 308.3 of the Law provided no exclusions from the 10–day notice of bulk sale requirement for fast-track sales. Dep't Op., 9/10/13, at 3. Further, quoting *Department of Revenue v. Qwest Transmission, Inc.*, 765 A.2d 818, 820 (Pa.Cmwlth.2000) (citation omitted), the Department noted the purpose of the 10–day notice of bulk sale requirement "is obviously to prevent a corporation owing taxes to the Commonwealth from denuding itself of its assets without first making payment of such taxes or without such payment being made by the purchaser of its assets." The Department further observed that Purchaser's knowledge of the circumstances of the case "should have given [Purchaser] greater reason to require a clearance certificate for purposes of Section 308.3(a)." Dep't Op. at 4.

The Department also rejected Purchaser's defense that the Sale Agreement placed liability for Predecessor's unpaid UC tax obligations on Predecessor. The Department observed that nothing in Section 308.3(a) accommodates such a defense, and Purchaser cited no authority which permits private parties to contract away the Commonwealth's tax preferences or entitlements. Dep't Op. at 4. Although Purchaser may have an action for breach of contract against Predecessor, it cannot rely on its Sale Agreement with Predecessor to evade the Department's statutory collection provisions. *Id.* Purchaser petitions for review.[2]

## II. Discussion

### A. Argument

Purchaser contends, under the particular circumstances of this case, the Department's conclusion that Purchaser was responsible for Predecessor's unpaid UC contributions under Section 308.3(a) of the Law is contrary to both law and public policy. To that end, Purchaser asserts, the parties entered into the Sale Agreement in order for Predecessor to avoid prison and make a payment on the back taxes. In fact, the parties executed the Sale Agreement the day before Predecessor's scheduled sentencing date. As such, Purchaser argues it had no time to obtain a clearance certificate under Section 308.3(a) of the Law.

Further, Purchaser asserts, the Sale Agreement included a provision confirming that Purchaser owed no state taxes at the time of transfer. Specifically, Section 2.3 of the Sale Agreement, titled *"Transfer and Assignment of Sale Assets,"* provided (with emphasis added):

> *Good and marketable title to the Sale Assets shall be sold, assigned, transferred and conveyed to Purchaser by Seller at the Closing, free and clear of all claims, liabilities, taxes, liens, security interests, encumbrances, restrictions and adverse rights of use or ownership of any kind or nature whatsoever.* The Sale assets shall be conveyed to Purchaser by appropriate bills of sale, deeds or other instruments of transfer in form acceptable to Purchaser. Seller covenants that it will from time to time after the Closing Date, make, execute and deliver, or cause to be made, executed and delivered, such

---

**2.** Our review of a Commonwealth agency decision is limited to determining whether the agency's necessary findings of fact were supported by substantial evidence, whether errors of law were committed, or whether constitutional rights were violated. 2 Pa.C.S. § 704; *Armstrong Cnty. Mem'l Hosp. v. Dep't of Pub. Welfare*, 83 A.3d 317 (Pa.Cmwlth. 2014).

instruments, acts, consents and assurances that Purchaser may reasonably request (at Seller's cost and expense) in order to more effectively sell, transfer, assign, convey and deliver to, and to vest in, Purchaser all of the Sale assets as provided herein.

R.R. at 15a–16a.

In light of Section 2.3 of the Sale Agreement, Purchaser argues it is reasonable to conclude that Purchaser owes no UC taxes to the Commonwealth. Moreover, Purchaser asserts it would be inherently unfair under the circumstances to require Purchaser to pay the back UC taxes at this time.

Purchaser also argues the purpose of Section 308.3(a) of the Law is to ensure the Commonwealth receives payment of unpaid UC contributions at the time the business is sold. Here, the purpose of the Sale Agreement was to provide Predecessor with the funds to pay his back taxes. As a result of the Sale Agreement, the Commonwealth received a substantial payment for back taxes. Absent the Sale Agreement, the Commonwealth would have received nothing. Therefore, it would be unfair and inequitable to require Purchaser to pay any further taxes on behalf of Predecessor at this time.

### B. Analysis

Section 308.3(a) of the Law, 43 P.S. § 788.3(a) (relating to transfer of assets; liability of purchaser), provides (with emphasis added):

(a) Every employer subject to the provisions of this act, who shall sell in bulk fifty-one percentum or more of his assets, including but not limited to, any stock of goods, wares or merchandise of any kind, fixtures, machinery, equipment, building or real estate, shall give the department ten (10) days' notice of the sale prior to completion of the transfer of the property. It shall be the duty of such employer to file all contribution reports with the department to the date of such proposed transfer of property and pay all contributions, interest, penalties due and payable thereon. *The employer shall present to the purchaser of such property, a certificate which shall be furnished forthwith by the department showing that all reports have been filed and contributions, interest and penalties paid to the date of the proposed transfer. The failure of the purchaser to require such certificate shall render such purchaser liable to the department for the unpaid contributions, interest and penalties owing by the employer.*

In short, the language of Section 308.3(a) of the Law is clear and unequivocal. Pursuant to Section 308.3(a), a purchaser of 51% or more of any employer's bulk assets must require that the seller provide it with a clearance certificate indicating all UC contributions, interest and penalties were paid. Further, where the purchaser fails to obtain a certificate, the purchaser is then liable to the Department for the seller's unpaid contributions, interest and penalties. 43 P.S. § 788.3(a). "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b).

Here, Purchaser cites no authority that a fast-track or "fire sale" of an employer's bulk assets warrants an exemption from the requirement in Section 308.3(a) that a purchaser obtain a clearance certificate to avoid liability for the seller's unpaid UC taxes. In *Commonwealth ex rel. Department of Justice v. Socony–Vacuum Oil Co.*, 347 Pa. 410, 416, 32 A.2d 631, 633 (1943), the Supreme Court recognized (with emphasis added) that the purpose of the requirement in tax statutes that a bulk

asset purchaser obtain a certificate from a seller indicating that all taxes owed were paid "is obviously to prevent a corporation owing taxes to the Commonwealth from denuding itself of its assets *without first making payment of such taxes or without such taxes being made by the purchaser of its assets.*"

In *Department of Revenue, Bureau of Corporation Taxes v. Marros,* 60 Pa. Cmwlth. 263, 431 A.2d 392 (1981), this Court observed that the statutory duty imposed upon a purchaser of bulk assets to obtain a tax clearance certificate from the seller was not overly burdensome. In addition, we noted, the purchasers, "like all other Pennsylvanians, are presumed to know the law." *Id.* at 394. Ultimately, we concluded the purchasers' failure to comply with the statute precluded them from later challenging the amount of the tax assessment. *Id.*

Further, in *Quest Transmission,* we determined, a successor corporation that purchased the bulk assets of a predecessor corporation without obtaining a clearance certificate remained liable for the predecessor corporation's unpaid taxes. As in *Marros,* we reasoned that the purchasers' failure to comply with the certificate requirement deprived them of an opportunity to later challenge the amount of taxes owed.

Nonetheless, the facts in the present case are somewhat different from those in *Quest Transmission* or *Marros.* Here, Purchaser does not challenge the amount of taxes owed. Rather, Purchaser argues it is not liable for any unpaid taxes given the particular circumstances of this case.

We disagree. Prior to the sale, Purchaser knew Predecessor owed back taxes and needed money to avoid being sentenced to prison. At a minimum, these facts provided Purchaser with actual notice that Predecessor had severe financial liabilities, including state tax liabilities. As such, Purchaser had a reasonable duty under Section 308.3(a) to ascertain the extent of Predecessor's liabilities prior to purchasing Predecessor's assets without obtaining a bulk sales clearance certificate from the Department.

Absent a legitimate due process challenge, equity has no jurisdiction to restrain the collection of taxes. *Cedarbrook Realty, Inc. v. Nahill,* 484 Pa. 441, 399 A.2d 374 (1979). Further, "[w]here an important government interest such as collecting revenue exists, private property rights must yield to governmental need." *Marros,* 431 A.2d at 393.

Here, despite knowledge of Predecessor's financial condition, Purchaser chose to proceed with the purchase of 51% or more of Predecessor's assets without obtaining a Department-issued clearance certificate from Predecessor. Pursuant to Section 308.3(a) of the Law, Purchaser's failure to obtain a clearance certificate rendered it liable for Predecessor's unpaid UC contributions, interest and penalties. *Quest Transmission; Marros.* Moreover, Purchaser's lack of compliance with Section 308.3(a) also precluded Purchaser from challenging its liability for Predecessor's unpaid UC taxes. *Id.*

For the same reasons, we also reject Purchaser's contention that Section 2.3 of the Sale Agreement, wherein Predecessor agreed to transfer title to its assets to Purchaser, free and clear of all claims, taxes and liabilities, provided Purchaser with a defense to the Department's assessment against it for Predecessor's unpaid UC taxes. At the most, the Sale Agreement may provide Purchaser recourse against Predecessor for breach of contract. However, the Sale Agreement cannot preclude the Department from assessing Purchaser for Predecessor's unpaid UC taxes

under Section 308.3(a) of the Law. *Socony–Vacuum Oil Co.; Marros.*

As discussed above, Section 308.3(a) of the Law provided Purchaser with a procedure to insulate itself from Predecessor's tax liability by requiring a clearance certificate. Purchaser, however, chose to proceed with the Sale Agreement without the protection of a clearance certificate. Therefore, we discern no error in the Department's denial of Purchaser's petition for reassessment. *Socony–Vacuum Oil Co.; Qwest Transmission; Marros.* Accordingly, we affirm.

## ORDER

**AND NOW,** this 11th day of April, 2014, for the reasons stated in the foregoing opinion, the final order of the Department of Labor and Industry is **AFFIRMED.**