IN THE COMMONWEALTH COURT OF PENNSYLVANIA

HUF Restaurant, Inc.,                          :
                          Petitioner           :
                                               :
              v.                               :    No. 394 F.R. 2018
                                               :    ARGUED:  September 11, 2023
Commonwealth of Pennsylvania,                  :
                          Respondent           :


BEFORE:    HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE STACY WALLACE, Judge
           HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


OPINION
BY JUDGE WALLACE                              FILED:  April 19, 2024


       Petitioner HUF Restaurant, Inc. (HUF) petitions for review of the April 26, 2018 order of the Board of Finance and Revenue (Board) denying HUF's appeal of a bulk sale assessment resulting from HUF's purchase of a restaurant from Zola New World Bistro, Ltd. (Zola), including the purchase and transfer of a liquor license. The Board denied HUF's appeal due to its failure to obtain and present the Department of Revenue (Department) with a bulk sale tax clearance certificate (bulk sale certificate) pursuant to Section 1403(a) of The Fiscal Code,[1] 72 P.S. § 1403(a).[2] After thorough review, we are constrained to affirm.

_____

[1] Act of April 9, 1929, P.L. 343, *as amended*, 72 P.S. §§ 1-1805.

[2] Section 1403(a) of The Fiscal Code is incorporated into the sales and use tax law by Section 240 of the Tax Reform Code of 1971 (Tax Code), Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. §§ 7101-10004.  Section 240 of the Tax Code provides:

## I. Factual Background and Procedural History

### A. Zola's Sale to HUF

The facts of this matter are not in dispute, having been established by joint stipulation of the parties.[3] Zola operated a restaurant on West College Avenue in State College, Pennsylvania, for a number of years, up through 2014. On February 6, 2015, Zola entered into an Agreement of Sale with HUF wherein Zola agreed to sell its restaurant assets and liquor license to HUF for the sum of $725,000, of which $425,000 was allocated to the liquor license. Stipulation of Facts (SOF) ¶¶ 3, 6; SOF Exs. A, B.

Zola warranted and represented to HUF in the Agreement of Sale that it "owes no undisclosed outstanding liabilities affecting the business or that might affect consummation of the transfer of the business (including the bulk sale laws) nor will such transfer violate any agreements or law." SOF ¶ 7 (quoting SOF Ex. A ¶ 13(b)). The Agreement of Sale further "provided that Zola would indemnify HUF for all

> A person that sells or causes to be sold at auction, or that sells or transfers in bulk, [51%] or more of any stock of goods, wares or merchandise of any kind, fixtures, machinery, equipment, buildings or real estate, involved in a business for which the person is licensed or required to be licensed under the provisions of this article, or is liable for filing use tax returns in accordance with the provisions of this article, shall be subject to the provisions of section 1403 of []The Fiscal Code.[]

72 P.S. § 7240.

[3] As factfinder, "[t]his Court reviews decisions of the Board *de novo* based on stipulated facts or a record created before this Court," or a combination thereof. *Synthes USA HQ, Inc. v. Commonwealth*, 236 A.3d 1190, 1193 n.4 (Pa. Cmwlth. 2020), *aff'd*, 289 A.3d 846 (Pa. 2023) (citing Pa.R.A.P. 1571(h); *Plum Borough Sch. Dist. v. Commonwealth*, 860 A.2d 1155 (Pa. Cmwlth. 2004)). Here, the parties filed a stipulation of facts (SOF) with this Court on November 28, 2022. "The facts stipulated by the parties are binding and conclusive and should be regarded as this Court's findings of fact." *Quest Diagnostics Venture, LLC v. Commonwealth*, 119 A.3d 406, 410 n.4 (Pa. Cmwlth. 2015), *aff'd*, 148 A.3d 448 (Pa. 2016). "However, this Court may draw its own legal conclusions." *Am. Elec. Power Serv. Corp. v. Commonwealth*, 184 A.3d 1031, 1034 n.7 (Pa. Cmwlth.), *aff'd*, 199 A.3d 880 (Pa. 2018) (quotation omitted).

taxes due and payable by Zola prior to closing, and for any taxes that arose as a result of the sale." *Id*. ¶ 9; *see also* SOF Ex. A ¶ 15(b).[4] The parties twice agreed to extend the date of closing via addendums to the Agreement of Sale dated March 2 and April 14, 2015. SOF ¶¶ 11-12; SOF Exs. C, D. The Agreement of Sale and both addendums were signed on behalf of Zola by its President, David R. Fonash. SOF Exs. A, C, D. Closing on the asset purchase occurred on May 15, 2015, at which time HUF paid Zola the remaining balance of $672,000, including $425,000 for the liquor license. SOF ¶ 14.

Because the transaction involved the sale in bulk of more than 51% of Zola's assets, Section 1403(a) of The Fiscal Code was triggered, 72 P.S. § 1403(a). SOF ¶ 24. That section provides as follows:

> Every corporation, joint-stock association, limited partnership, or company, which shall sell or transfer in bulk [51%] or more of any stock of goods, wares, or merchandise of any kind, fixtures, machinery, equipment, buildings, or real estate, shall give the Department [] [10] days' notice of the sale or transfer prior to the completion of the transfer of such property. It shall also be the duty of every corporation, joint-stock association, limited partnership or company to file all State tax reports with the Department [], to and including the date of such proposed transfer of property, and pay all taxes due the Commonwealth to and including said date. **The seller or transferer shall present to**

---

[4] Zola made the following additional representations in the Agreement of Sale:

> c. No litigation or proceedings, whether legal, equitable, administrative or otherwise, are now pending or threatened that might affect the business or consummation of the transfer of the business's assets;

> d. [Zola] has complied with all laws, rules and regulations relating to the business;

> e. [Zola] has paid in full, or will arrange for payment, of all taxes owed by the business or that may arise as a result of this agreement.

SOF Ex. A ¶ 13(c)-(e).

3

**the purchaser of such property a certificate from the Department [], showing that all State tax reports have been filed and all State taxes paid to and including the date of the proposed transfer.** *The failure of the purchaser to require this certificate shall render such purchaser liable to the Commonwealth for the unpaid taxes owing by the seller or transferer to and including the date of such transfer, whether or not at that time such taxes have been settled, assessed, or determined*: Provided, That nothing contained in this act shall apply to sales or transfers made under any order of court, or to any sales or transfers made by assignees for the benefit of creditors, executors, administrators, receivers, or any public officer in his official capacity, or by any officer of a court. Whenever it shall become necessary for the [D]epartment to make an estimated tax settlement for the purpose of issuing a certificate under the provisions of this section, the [D]epartment may strike off such an estimated settlement when the annual tax report is settled.

Section 1403(a) of The Fiscal Code, 72 P.S. § 1403(a) (emphasis added). Crucially, HUF admits that a bulk sale occurred and that it failed to obtain the required bulk sale certificate. SOF ¶¶ 24, 25, 57, 59.

On February 3, 2015, before closing on the transaction, HUF submitted a letter request to the Department for a lien certificate. SOF ¶ 18; SOF Ex. F. The Department issued a lien certificate on February 23, 2015, indicating that it had no outstanding liens against Zola. SOF ¶¶ 15-16; SOF Ex. E. Notably, the lien certificate expressly states that it "is **not to be confused or used in lieu of a bulk sale** [] **certificate**, which must be obtained by completing REV-181, Application for Tax Clearance Certificate, and submitted to the [D]epartment pursuant to [Section 1403 of The Fiscal Code,] 72 P.S. § 1403." SOF ¶ 17 (emphasis added) (quoting SOF Ex. E). While "[l]ien certificates show the character and amount of all outstanding tax liens of record maintained by the Department [] against a taxpayer," SOF ¶ 22, bulk sale certificates reveal more information, including "that all state tax reports have been filed and all state liabilities (including those subject to a tax lien

4

and those that are not) up to and including the date of the proposed transfer have been paid." SOF ¶ 20.

Because the transaction included the purchase and transfer of Zola's liquor license, the provisions of the Liquor Code[5] pertaining to license transfers also applied. *See* SOF ¶¶ 26-27. In particular, Section 477 of the Liquor Code states:

> (a) **An applicant for the grant, renewal or transfer of any license issued pursuant to this article shall provide** to the [Pennsylvania Liquor Control B]oard [(PLCB)], upon forms approved by the Department[], the following:
> . . . .
>
> > (6) **a statement that**:
> >
> > (i) **all State tax reports have been filed and all State taxes paid**;
> >
> > (ii) all State taxes are subject to a timely administrative or judicial appeal; or
> >
> > (iii) all State taxes are subject to a duly approved deferred payment plan.
>
> (b) An applicant for the grant, renewal or transfer of any license issued pursuant to this article shall, by the filing of an application insofar as it relates to the [PLCB], waive any confidentiality with respect to State tax information regarding said applicant in the possession of the Department[], the Office of Attorney General or the Department of Labor and Industry [(L&I)], regardless of the source of that information and shall consent to the providing of that information to the [PLCB] by the Department[], the Office of Attorney General or [L&I].
>
> (c) Upon receipt of any application for the grant, renewal or transfer of any license issued pursuant to this article, the [PLCB] shall review the State tax status of the applicant. The [PLCB] shall request State tax information regarding the applicant from the Department[], the Office of Attorney General or [L&I] and said information shall be provided.

---

[5] Act of April 12, 1951, P.L. 90, *as amended*, 47 P.S. §§ 1-101 - 10-1001.

(d) **The [PLCB] shall not approve any application** for the grant, renewal or transfer of any license issued pursuant to this article **where the applicant has failed to**:

(1) provide any of the information required by subsection (a);

(2) **file required State tax reports; or**

(3) **pay any State taxes not subject to a timely administrative or judicial appeal or subject to a duly authorized deferred payment plan**.

(e) For the purpose of this section, the term "applicant" shall include the transferor and transferee of any license issued under this act.

Added by the Act of June 29, 1987, P.L. 32, 47 P.S. § 4-477 (emphasis added).

Both Zola and HUF submitted clearance tax certification statements to the PLCB[6] to initiate the liquor license transfer process, which prompted the PLCB to make requests to L&I and the Department regarding Zola's and HUF's clearances. SOF ¶¶ 26, 29. The parties stipulated to the following additional facts regarding the PLCB liquor license transfer process:

32. In an email dated March 11, 2015, Dave Trexler, Revenue Enforcement Collections Agent for the Department[], communicated the following to Mr. Fonash. []

"*You contacted the office, Zola was cleared in Feb*[*ruary*]." [(Quoting SOF Ex. I.)]
. . . .

34. On April 20, 2015, Mr. Fonash forwarded the March 11, 2015[] email from Mr. Trexler to HUF Counsel with the following message.

---

[6] HUF submitted its clearance tax certification statement, known at the time as a PLCB-1898 form, on or about February 13, 2015. SOF ¶¶ 29, 31; SOF Ex. H. Zola submitted its PLCB-1898 form on or about March 25, 2015. *Id.* ¶ 33; SOF Ex. J.

"*I hear we have some sort of tax clearance issue on someones* [*sic*] *end . . .* [.] *Please see email below, from* [*the Department*] *that I got last month when I double checked that we were good on our end. Jeff, please let me know what you find out*.["] [(Quoting SOF Ex. I.)]

35. HUF and HUF Counsel understood the reference to Zola being cleared in February in the email from Mr. Trexler related to the tax clearance sought for the [l]iquor [l]icense under Section [] 477 of the Liquor Code[, 47 P.S. § 4-477].

36. HUF solely relies on the statement from Mr. Trexler and the other facts contained in this S[OF] for purposes of establishing reliance in this appeal.

37. By letter dated April 23, 2015 ("Discrepancies Letter"), the PLCB communicated to HUF Counsel that tax clearance from the Department[] had not been received for HUF and tax clearance from [L&I] had not been received for Zola, among other discrepancies. [*See* SOF Ex. K.]

38. The Discrepancies Letter does not note discrepancy with respect to HUF's clearance from [L&I], nor does it note discrepancy with respect to Zola's clearance from the Department[], and Mr. Fonash and Mr. Hufnagel [(HUF's President)] were cc'ed [sic] on the Discrepancies Letter. *See* [SOF Ex.] K.

39. By letter dated May 6, 2015[], the PLCB issued clearance and the [liquor] license transferred to HUF. [*See* SOF Ex. L.]

SOF ¶¶ 32, 34-39 (italics in original). As the Commonwealth admits in its brief, the PLCB Clearance Letter indicates that the PLCB "cleared the discrepancies reflected in the letter dated April 23, 2015, and **each entity had obtained the appropriate tax clearances from the Department**[] **and [L&I] for the transfer thereof**." Commonwealth's Br. at 13 (citing SOF ¶ 39) (emphasis added).

### B. Bulk Sale Assessment and Related Appeals

While the above events were unfolding, on March 2, 2015, the Department's Bureau of Audits contacted Mr. Fonash and advised him that Zola was subject to a

sales and use tax audit for the period January 1, 2012, through February 28, 2015. SOF ¶¶ 41-42. Notice of the audit was provided after Zola and HUF entered into the Agreement of Sale, but before the actual closing on the transaction and before at least one of the addendums extending the closing date.[7] Both addendums contain the following reaffirmation clause: "The parties agree to affirm the provisions of their agreement dated February 6, 2015[,] except as otherwise revised herein, and do reaffirm that agreement." SOF Exs. C, D. There is nothing in either addendum mentioning Zola's pending audit.

Mr. Fonash initially requested that the audit start on April 7, 2015, and subsequently that it be postponed until April 13, 2015. SOF ¶¶ 43, 45. A pre-audit conference was conducted on April 13, 2015. *Id*. ¶ 46. The Department, having been made aware of the asset purchase, requested that Zola provide it with a copy of the Agreement of Sale, but Zola never complied with this request. *Id*. The Department finalized Zola's audit on August 21, 2015, and issued an assessment to Zola in the amount of $92,028.53 on October 21, 2015. *Id*. ¶ 47; Commonwealth's Br. at 14. Zola timely filed a petition for reassessment which was denied by the Board of Appeals through a decision and order dated April 1, 2016. *Id*. ¶ 48. Zola did not file an appeal with the Board. Therefore, the assessment became final on June 30, 2016. *Id*. ¶ 49.

It is undisputed that HUF and HUF Counsel were unaware of the facts surrounding Zola's audit and assessment before closing on the asset purchase. *Id*. ¶ 50. In fact, the parties agree that HUF only became aware of the assessment in 2017, long after the appeal period lapsed and the Board of Appeals' decision as to Zola became final. *Id*.

---

[7] As noted above, the first addendum was dated March 2, 2015, the same date as the audit notice. *See* SOF Ex. C.

8

Zola failed to pay the assessment, even though it involved pre-closing tax liabilities which Zola agreed to pay, or indemnify HUF for, through the Agreement of Sale. *See id.* ¶ 40. On March 22, 2017, the Department issued a bulk sale notice of assessment against HUF for Zola's unpaid, pre-closing sales and use tax liabilities. *Id.*; SOF Ex. M. The assessment indicates that it covers the period June 1, 2014, to December 31, 2014, and is for taxes, penalties, and interest totaling $92,028.53, the same total amount as Zola's assessment. *Id.* ¶ 51; SOF Ex. M.

HUF made demand on Zola for payment of the assessment via letter dated May 24, 2017, but Zola refused to pay. *Id.* ¶ 52; SOF Ex. N. HUF then filed a timely petition for reassessment which was denied by the Board of Appeals through decision and order dated November 1, 2017. *Id.* ¶¶ 53-54; SOF Exs. O, P. HUF appealed to the Board, which summarily denied the appeal by decision and order dated May 7, 2018. *Id.* ¶¶ 56-57; SOF Exs. Q, R. The Board reasoned that because HUF acknowledged a bulk sale occurred and a bulk sale certificate was not obtained before the asset purchase, HUF was liable for Zola's pre-closing tax liabilities pursuant to Section 1403(a) of The Fiscal Code, 72 P.S. § 1403(a). SOF ¶ 57; SOF Ex. R. The petition for review to this Court followed.

### C. HUF's Sale to Spirits at Pugh Centre, LLC

On May 8, 2019 – after the Board's decision was issued and HUF appealed to this Court – HUF contracted to sell the liquor license to Spirits at Pugh Centre, LLC (Spirits) for $450,000. *Id.* ¶ 60; SOF Ex. T. The parties' Option, Purchase and Security Agreement states that the $450,000 in consideration was to be paid within 30 days, "provided the [liquor l]icense is free and clear of all liens, debts, taxes and encumbrances as of that date." SOF Ex. T at 1. The agreement further states:

> [HUF] has paid in full all taxes due to any governmental agency or department and will continue to do so until the [liquor l]icense is

9

transferred and closing on the sale of the [liquor l]icense has taken place, and that there are no liens or encumbrances of any nature against the [liquor l]icense. Until the transfer of [the liquor l]icense is completed hereunder, [HUF] shall promptly file all necessary returns and pay all taxes due to any governmental agency as and when due to enable transfer of the [liquor l]icense free and clear to [Spirits] or its designee.

*Id*. at 3.

Despite the above language, HUF did *not* pay the assessment at issue here within 30 days; however, the sale of the liquor license to Spirits was consummated on September 3, 2019. SOF ¶ 61. At that time, Spirits deducted $117,296.02[8] from the proceeds of the sale as payment to the Department for taxes owed. *Id*.; SOF Ex. U. As the parties stipulated: "The Department [] received payment from Spirits on September 9, 2019, which the Department [] applied to the [b]ulk [s]ale [a]ssessment in full satisfaction of the amount due, and which resulted in the [b]ulk [s]ale [a]ssessment against HUF being paid-in-full." *Id*. ¶ 62. Because of this, HUF and Spirits were able to obtain PLCB clearance and the liquor license has since transferred to Spirits. *Id*. ¶ 63.

With this background established, we turn to the arguments raised on appeal.

## II. Parties' Arguments

HUF argues that the Board's decision should be reversed and the assessment stricken because the Department cleared HUF and Zola of any taxes owed as part of the liquor license transfer process. Section 477 of the Liquor Code mandates that (1) a liquor license transfer applicant must provide the PLCB with a certification from the Department that all state taxes have been paid, and (2) the PLCB shall not approve a transfer where the applicant has failed to pay any state taxes. 47 P.S. § 4-

---

[8] The difference between the assessment amount issued against HUF and the amount remitted to the Department by Spirits "is due to the daily accrual of interest." Commonwealth's Br. at 16 n.6.

477. Here, the Department certified to the PLCB that neither HUF nor Zola owed any state taxes – in other words "cleared" them – and the PLCB reinforced this clearance by ultimately approving the liquor license transfer. HUF claims that it relied on this clearance during its asset purchase of Zola, that its reliance was justified, and that the clearance is binding on the Commonwealth.

In addition, it is undisputed that HUF was unaware of Zola's outstanding tax liability when it closed on the asset purchase. Zola unequivocally represented in the Agreement of Sale that it owed no outstanding liabilities affecting its business and that it would indemnify HUF for all taxes due and payable prior to closing. *See* SOF ¶ 9, SOF Ex. A. Conversely, the Department knew from its pre-audit conference with Zola that an Agreement of Sale was in place, yet it not only failed to inform HUF of the pending audit but certified to the PLCB that Zola did not owe any state taxes. For these reasons, HUF claims that it should not be responsible for the taxes assessed against Zola after HUF closed on the asset purchase, and the Commonwealth should be estopped from pursuing the assessment.

For its part, the Commonwealth cites multiple decisions of this Court for the proposition that HUF's failure to obtain a bulk sale certificate pursuant to Section 1403(a) of The Fiscal Code, 72 P.S. § 1403(a), is fatal to its appeal. *See, e.g.*, *A. Gadley Enters., Inc. v. Dep't of Lab. & Indus., Off. of Unemployment Comp. Tax Servs.*, 135 A.3d 1131 (Pa. Cmwlth. 2016); *Reese's Pizzas & More v. Dep't of Lab. & Indus., Off. of Unemployment Comp. Tax Servs.*, 93 A.3d 914 (Pa. Cmwlth. 2014);[9] *Dep't of Revenue, Bureau of Corp. Taxes v. Marros*, 431 A.2d 392 (Pa.

---

[9] We note that *A. Gadley* and *Reese's Pizzas* both involved the bulk sale provision of the Unemployment Compensation Law (UC Law) rather than that found in The Fiscal Code. *See* Section 308.3(a) of the UC Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, added by the Act of June 22, 1964, Spec. Sess., P.L. 112, 43 P.S. § 788.3(a).

Cmwlth. 1981). There are no exceptions in The Fiscal Code to the bulk sale certificate requirement, and HUF cannot rely upon the clearance provided during the liquor license transfer process because that involved a separate statutory scheme and the clearance provided was of limited scope. While all taxpayers are presumed to know the law, HUF was specifically put on notice of the bulk sale certificate requirement through the tax lien certificate issued by the Department. The Commonwealth further maintains that equitable considerations – such as ignorance of the law, representations made in private agreements, and estoppel – cannot save a buyer that fails to fulfill its statutory duty.

Lastly, the Commonwealth asserts that HUF is no longer the proper party of interest in this appeal. The Commonwealth claims that it received payment from Spirits, not HUF, in September 2019, and that the assessment has now been satisfied in full. As such, this is now a refund claim and only the entity that actually paid the assessed tax is eligible for a refund. *See* Section 252 of the Tax Reform Code of 1971 (Tax Code), 72 P.S. § 7252.

### III. Discussion

The Court is not unsympathetic to HUF's plight, and our decision should not be interpreted as condoning, in any way, the underlying actions of Zola. But despite the seeming inequity of the situation, we are compelled to affirm by the statute and case law.

One of the primary tenants of statutory construction is that "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." Section 1921(b) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(b). Here, the language of Section

However, the relevant language of the two statutory provisions is nearly identical and has been interpreted consistently.

1403(a) of The Fiscal Code is clear and unambiguous. *See Reese's Pizzas*, 93 A.3d at 917. A purchaser's failure to obtain a bulk sale certificate from a seller renders that purchaser liable to the Commonwealth for all unpaid taxes owed by the seller through the date of transfer, "*whether or not at that time such taxes have been settled, assessed, or determined.*" 72 P.S. § 1403(a) (emphasis added). This Court has repeatedly held that a purchaser's lack of diligence in complying with Section 1403(a) deprives it of the opportunity to contest liability for or challenge the amount of an assessment initially made against its predecessor. *See, e.g., Dep't of Revenue v. Qwest Transmission, Inc.*, 765 A.2d 818 (Pa. Cmwlth. 2000); *Marros*.

The statutory duty imposed upon a purchaser to obtain a bulk sale certificate from the seller is "not overly burdensome," *Reese's Pizzas*, 93 A.3d at 918 (citing *Marros*), and HUF admits that obtaining the bulk sale certificate would have put it on notice of Zola's audit and pending tax liability. HUF, like all taxpayers, is presumed to know the law. *See A. Gadley*; *Marros*. Additionally, the tax lien certificate HUF obtained from the Department prior to closing provided HUF with notice of not only its statutory duty but the specifics of how to comply, as the tax lien certificate expressly states that it "is **not to be confused or used in lieu of a bulk sale** [] **certificate**, which must be obtained by completing REV-181, Application for Tax Clearance Certificate, and submitted to the [D]epartment pursuant to [Section 1403 of The Fiscal Code,] 72 P.S. § 1403." SOF Ex. E (emphasis added); *see also* SOF ¶¶ 15-18. In addition, language or representations made in a private agreement, such as the Agreement of Sale here, may not save a purchaser from its statutory liability resulting from a bulk sale. *Reese's Pizzas*, 93 A.3d at 918-19 (finding that a sale agreement between the parties could not preclude L&I from assessing the purchaser for the seller's unpaid taxes). HUF's argument

13

that the Department knew about the pending asset purchase and Zola's audit is unavailing as "[n]othing in Section 1403 [of The Fiscal Code] requires the Department to give any notice to the purchasers concerning taxes which are due and owing by the seller." *Marros*, 431 A.2d at 393. In short, HUF as the purchaser "was in a superior position to protect itself," yet failed to do so. *A. Gadley*, 135 A.3d at 1140.

Without citing any supporting authority, HUF essentially argues that it should be exempt from the bulk sale certificate requirement because the Department certified during the liquor license transfer process that Zola had paid all of its State taxes. However, the language of Section 1403(a) does not provide any exclusions or exemptions from the bulk sale certificate requirement, let alone one that is based upon a separate statutory scheme such as the Liquor Code. "[T]his Court is not authorized to engraft language onto a statute[,]" and we "will not impute an intent where the statutory language is unambiguous." *Sadler v. Workers' Comp. Appeal Bd. (Phila. Coca-Cola)*, 210 A.3d 372, 382 (Pa. Cmwlth. 2019), *aff'd*, 244 A.3d 1208 (Pa. 2021) (quoting *Rogele, Inc. v. Workers' Comp. Appeal Bd. (Mattson)*, 969 A.2d 634, 638 (Pa. Cmwlth. 2009)). If the General Assembly had intended any exemptions from the bulk sale certificate requirement, it would have written The Fiscal Code to achieve that result. *See Rogele*, 969 A.2d at 638.[10] Further undercutting HUF's argument is the fact that the clearance provided by the Department during the liquor license transfer process would not have uncovered Zola's pending audit given the timing and limited nature of that clearance. Put

---

[10] While this exact situation appears to be novel, it bears noting that this Court previously rejected a purchaser's argument that an exemption from the bulk sale certificate requirement exists for a fast-track or "fire sale" where there may not be enough time to obtain the certificate before closing on a bulk sale. *See Reese's Pizzas*.

simply, the clearances provided during the liquor license transfer process and the bulk sale certificate are not equivalent and cannot be used interchangeably to satisfy HUF's statutory obligations.

As for HUF's estoppel argument, we conclude that this equitable remedy is unavailable to HUF based on the stipulated facts. "[T]he equitable doctrine of estoppel generally does not prevent the Commonwealth from pursuing taxes that are owed." *Kuharchik Constr., Inc. v. Commonwealth*, 236 A.3d 122, 137 (Pa. Cmwlth. 2020). *See also Mandler v. Commonwealth*, 247 A.3d 104, 115 (Pa. Cmwlth.) (*en banc*), *aff'd*, 263 A.3d 551 (Pa. 2021) (explaining that "[n]either the [Board] nor this Court has the power to alter . . . the [Tax Code] based on equitable principles"). However, "in very limited circumstances, the Court has applied equitable principles to the Commonwealth's taxing power." *Kuharchik*, 236 A.3d at 137.

Courts typically "require a stronger showing when estoppel is asserted against a governmental entity than when it is asserted against an individual." *Id.* at 138 (quoting *In re Est. of Leitham*, 726 A.2d 1116 (Pa. Cmwlth. 1999)). Therefore, to apply the doctrine of equitable estoppel to a Commonwealth agency, such as the Department here,

> [t]he party sought to be estopped [(]1) must have intentionally or negligently misrepresented some material fact[;] [(]2) know[n] or ha[d] reason to know that the other party would justifiably rely on the misrepresentation[;] and [(]3) induc[ed] the other party to act to his detriment because of his justifiable reliance on the misrepresentation. In addition, [o]ne who asserts estoppel must establish the essential elements thereof by clear, precise, and unequivocal evidence.

*Mandler*, 247 A.3d at 115 (quoting *Yurick v. Commonwealth*, 568 A.2d 985, 990 (Pa. Cmwlth. 1989)). We also must bear in mind that "[e]quitable estoppel is a

15

doctrine of fundamental fairness, dependent on the particular facts of each case[.]" *Kuharchik*, 236 A.3d at 138 (quoting *Dep't of Revenue, Bureau of Sales & Use Tax v. King Crown Corp.*, 415 A.2d 927, 929 (Pa. Cmwlth. 1980)).

Here, there is no evidence in the record that the Department intentionally or negligently misrepresented a material fact by certifying Zola during the liquor license transfer process. This certification was limited in nature as Section 477 of the Liquor Code does not encompass all of the possible tax liabilities covered by Section 1403(a) of The Fiscal Code; as explained above, the certifications or clearances are not interchangeable. In particular, the parties admit that the liquor license clearance process would *not* have revealed Zola's pending audit. More importantly, the Department's certification was technically accurate – Zola did not owe any taxes at the time the liquor license was transferred in May 2015, since the Department's audit was not completed until August 2015, and the assessment was not issued until October 2015. The only means of uncovering the pending audit and its potential tax liabilities, prior to the bulk sale, was by obtaining the bulk sale certificate, which HUF unfortunately failed to do. There also is no evidence before us to support a finding that the Department had reason to know that HUF would justifiably rely on the liquor license clearance or that the Department induced HUF to act to its detriment. Applying the law to the facts of record before us, "we cannot conclude that [HUF] has shown, through clear, precise[,] and unequivocal evidence, that equitable estoppel should apply." *Kuharchik*, 236 A.3d at 139 (quotation omitted).

Because HUF is seeking an equitable remedy, we also note the basic tenet of equity that the party seeking to invoke it must have clean hands. *See, e.g.*, *In re Adoption of S.A.J.*, 838 A.2d 616, 625 (Pa. 2003); *Belleville v. David Cutler Grp.*,

118 A.3d 1184, 1199 (Pa. Cmwlth. 2015). Under the doctrine of unclean hands, a court may deprive a party of equitable relief when that party "is guilty of bad conduct relating to the matter at issue." *Belleville*, 118 A.3d at 1199 (quoting *Terraciano v. Dep't of Transp., Bureau of Driver Licensing*, 753 A.2d 233, 237-38 (Pa. 2000)). More specifically, this doctrine "'requires that one seeking equity act fairly and without fraud or deceit as to the controversy in issue.'" *Belleville*, 118 A.3d at 1199 (quoting *Terraciano*, 753 A.2d at 238). While HUF's actions herein do not rise to the level of fraud or deceit, it certainly is not without blame as it was explicitly notified of the statutory requirement to obtain a bulk sale certificate yet failed to do so. In short, HUF's predicament is one of its own making.

Finally, we reject the Commonwealth's argument that HUF is not the proper party in this appeal. The record makes clear that the assessment was paid directly out of funds from HUF's sale to Spirits, meaning from proceeds that otherwise would have been payable to HUF. Concomitantly, if this Court had reversed the Board's decision and found HUF was not liable for the assessment, then HUF would have been entitled to a credit or refund, not Spirits.[11]

---

[11] During oral argument, this Court inquired whether HUF's appeal was moot, given that it already paid the bulk sale assessment issued against it. The Commonwealth's Counsel explained HUF's appeal was not moot because it would receive a credit on its tax account if the appeal succeeded. The Commonwealth's Counsel may have been referring to Section 1108(a) of The Fiscal Code, which permits a taxpayer to pay "all or any part of the amount of any tax . . . without prejudice to his right to present and prosecute a petition for . . . reassessment." 72 P.S. § 1108(a). In relevant part, Section 1108(b)(1) provides the Department must credit a taxpayer's account if the amount due on an assessment, decision by a court of competent jurisdiction, or final judgment entered on appeal is less than the amount paid to the Department. 72 P.S. § 1108(b)(1). Section 252 of the Tax Code provides for a similarly flexible approach, directing that "nothing contained herein shall be deemed to prohibit a taxpayer who has filed a timely petition for reassessment from amending it to a petition for refund where the petitioner has paid the tax assessed." 72 P.S. § 7252.

It is important to add the Department provides one form, REV-65, for both reassessment and refund petitions. REV-65 expressly permits a taxpayer to file a reassessment petition after the

17

## IV. Conclusion

In conclusion, the purpose of Section 1403(a) of The Fiscal Code is to prevent exactly what happened here, "a corporation owing taxes to the Commonwealth from denuding itself of its assets without first making payment of such taxes or without such payment being made by the purchaser of its assets." *Marros*, 431 A.2d at 394 (quoting *Commonwealth ex rel. Dep't of Justice v. Socony-Vacuum Oil Co., Inc.*, 32 A.2d 631, 633 (Pa. 1943)). HUF's timely discharge of its statutory duty would have alerted it of Zola's pending audit. Given the clear language of the statute, and case law interpreting the same, we must agree with the Board that HUF's failure to obtain a bulk sale certificate deprives it of the opportunity to challenge the assessment at this stage of the proceedings. *See Qwest*; *Marros*. "While the result here may seem unfair from [HUF]'s point of view, the result is required by the [statute], and the

---

challenged tax assessment has been paid in full. *See* Pa. Dep't of Revenue, *REV-65*, https://www.revenue.pa.gov/FormsandPublications/otherforms/Documents/rev-65.pdf (last visited April 18, 2024) (explaining, in the "Petition for Reassessment/Review" instructions section: "If the tax assessment amount and penalty/fees assessment amount have been paid in full, provide date paid.").

A case is moot when "a subsequent change in circumstances has eliminated the controversy so that the court lacks the ability to issue a meaningful order, that is, **an order that can have any practical effect**." *Kupershmidt v. Wild Acres Lakes Prop. Owners' Ass'n*, 143 A.3d 1057, 1061 (Pa. Cmwlth. 2016) (quoting *Burke ex rel. Burke v. Indep. Blue Cross*, 103 A.3d 1267, 1271 (Pa. 2014)) (emphasis added). The provisions cited above, along with REV-65, show HUF would be entitled to relief if its appeal were successful, just as the Commonwealth's Counsel explained. In other words, the Court is able to issue an order with practical effect, and the appeal is not moot. To conclude otherwise would discourage taxpayers from satisfying their tax obligations during the pendency of a case and punish those who do by putting them out of court, contrary to the General Assembly's intent and the Department's instructions to the public.

18

practical reasons for shifting the risk of collection to a bulk purchaser are illustrated by these facts." *A. Gadley*, 135 A.3d at 1140.[12]

      Accordingly, we are constrained to affirm.

_____

STACY WALLACE, Judge

Senior Judge Leadbetter concurs in the result only.

---

[12] The legislature anticipated situations such as this when it expressly engrafted into the law that "the failure of a purchaser to require [the bulk sale] certificate shall render the purchaser liable for the unpaid taxes." Section 1403(a) of The Fiscal Code, 72 P.S. § 1403(a). The Commonwealth, being a steward of public interests and resources, has a duty to efficiently collect taxes due. The legislature wrote the law in a way that the Commonwealth gets paid from the purchaser if taxes are due, and the purchaser (as compared to the Commonwealth) carries the burden of trying to recoup monies for which the purchaser believes (1) another should have borne responsibility and/or (2) another should have identified before closing.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

HUF Restaurant, Inc.,            :
                 Petitioner      :
                                :
         v.                   :    No. 394 F.R. 2018
                                :
Commonwealth of Pennsylvania,  :
                Respondent    :

# **O R D E R**

**AND NOW**, this 19th day of April 2024, the April 26, 2018 order of the Board of Finance and Revenue in the above-captioned matter is **AFFIRMED**. This Order shall become final unless exceptions are filed within 30 days pursuant to Pennsylvania Rule of Appellate Procedure 1571(i), Pa.R.A.P. 1571(i).

_____
STACY WALLACE, Judge